McCORMICK & COMPANY, Incorporated

v.

UNITED STATES.

No. 396–55.

United States Court of Claims

Feb. 11, 1959.

Thornton C. Land, New York City, for plaintiff. Paul L. Peyton and J. Christopher Meyer, Jr., New York City, were on the brief.

Benjamin H. Pester, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. David A. Wilson, Jr., and Lyle M. Turner, Washington, D. C., were on the briefs.

LARAMORE, Judge.

The question involved in this case is whether the plaintiff was entitled under section 3250(l) of the Internal Revenue Code of 1939, as amended (26 U.S. C., 1952 ed., 3250(l)), to a drawback of the tax previously paid on a certain batch of ethyl alcohol, comprising 6,073.20 proof gallons, which the plaintiff used during August and September of 1953 in the manufacture of flavoring extracts.

During the period here involved, section 3250(l) of the Internal Revenue Code of 1939, as amended, provided in part as follows:

"Any person using distilled spirits *produced in a domestic registered distillery or industrial alcohol plant* and fully tax-paid in the manufacture or production of medicines, medicinal preparations, food products, flavors, or flavoring extracts which are unfit for beverage purposes, upon payment of a special tax per annum, shall be eligible for drawback at the time when such distilled spirits are used in the manufacture of such products * * *." [Emphasis supplied.] [1]

It is common knowledge that ethyl alcohol (i. e., ordinary alcohol) comes within the category of distilled spirits. Moreover, it is clear from the evidence in this case that the particular batch of ethyl alcohol involved in the litigation was fully tax-paid at the time when it was used by the plaintiff, that the plaintiff used it in the manufacture of flavoring extracts, that such flavoring extracts were unfit for beverage purposes, and that the plaintiff had paid the special annual tax mentioned in section 3250(l) of the Internal Revenue Code of 1939, as amended. Therefore, the principal issue in the case is whether the ethyl alcohol was "produced in a domestic registered distillery or industrial alcohol plant."

The particular batch of ethyl alcohol with which we are concerned was purchased by the plaintiff on August 7, 1953 from the U. S. Industrial Chemicals Company (which will usually be referred to in this opinion as "USI"). USI was then, and is now, the operator under 26 CFR, Part 182, of a domestic registered industrial alcohol plant at Curtis Bay, Baltimore, Maryland.

Acting in accordance with the authorization contained in section 3125(a) of the Internal Revenue Code of 1939, as amended (26 U.S.C., 1952 ed., 3125(a)), for the importation into the United States of "alcohol of 160 proof, or greater," for industrial purposes, USI on June 2, 1953 entered into a contract with the Justfrank Company for the purchase by the former from the latter of:

"* * * approximately 5,675,000 U. S. wine gallons of ethyl alcohol, at 190 U. S. proof, * * * stored in * * * France."

It was provided in the contract that the ethyl alcohol should be delivered to USI at its Curtis Bay plant. The contract prescribed various specifications, in addition to the matter of proof, which the ethyl alcohol should meet.

During June and July of 1953, the Justfrank Company shipped or caused to be shipped to USI from France a total of 5,583,529 U. S. wine gallons of impure ethyl alcohol. This ethyl alcohol failed to meet a number of the specifications prescribed in the contract. It did, however, meet the requirement of the contract as to proof.

Although the impure ethyl alcohol that was furnished to USI under the contract

---

1. A similar provision is found in Sec. 5131 (a) of the Internal Revenue Code of 1954. 26 U.S.C., 1952 ed., Supp. V, § 5131(a).

of June 2, 1953 failed to meet a number of the specifications prescribed in the contract, the ethyl alcohol was accepted by USI when it was tendered for delivery at USI's Curtis Bay plant. Because of the presence in this ethyl alcohol of impurities, particularly excessive amounts of methyl alcohol (methanol), amyl alcohol, and nonvolatile residue, the ethyl alcohol, at the time when it was delivered to and received by USI, was not suitable for human consumption and was not usable in the manufacture or production of medicines, medicinal preparations, food products, flavors, or flavoring extracts (i. e., the purposes mentioned in section 3250($l$) of the Internal Revenue Code of 1939, as amended).

Shortly after the importation by USI of the impure ethyl alcohol from France, the alcohol was processed by USI in its plant at Curtis Bay. The processing consisted, first, of a chemical treatment in order to make the excessive impurities in the alcohol susceptible of removal through further distillation, and, second, of an additional distillation procedure, unusually complicated in nature, for the removal of the excessive impurities. There resulted from this chemical treatment and additional distillation a supply of more than 5,000,000 U. S. wine gallons of ethyl alcohol that was suitable for human consumption and usable in the manufacture or production of medicines, medicinal preparations, food products, flavors, or flavoring extracts.

On August 7, 1953, USI sold to the plaintiff 7,620.20 proof gallons of the ethyl alcohol that resulted from the chemical treatment and additional distillation mentioned in the preceding paragraph. In making this sale, USI impliedly warranted (among other things) that the ethyl alcohol sold to the plaintiff constituted nonbeverage drawback spirits. A tax was paid by USI to the Internal Revenue Service at the rate of $10.50 per proof gallon, or in the total amount of $80,012.10, in connection with the delivery of the 7,620.20 proof gallons of ethyl alcohol to the plaintiff. The purchase price which the plaintiff paid to USI for this ethyl alcohol included the amount of the tax.

Thereafter, during August and September of 1953, the plaintiff used 6,073.-20 proof gallons of this tax-paid ethyl alcohol in the manufacture and production of flavoring extracts. Such flavoring extracts were unfit for beverage purposes.

The plaintiff later filed with the Internal Revenue Service in October 1953 a claim under section 3250($l$) of the Internal Revenue Code of 1939, as amended, for a drawback of the tax previously paid on the 6,073.20 proof gallons of ethyl alcohol referred to in the preceding paragraph. The claim was rejected by the administrative agency on the ground that the ethyl alcohol in question was imported and not "produced in a domestic registered distillery or industrial alcohol plant," as required by section 3250($l$). The amount of the drawback claimed on this ethyl alcohol was $57,695.40.

The administrative rejection of the plaintiff's claim was followed by the institution of the present suit alleging plaintiff's entitlement to a drawback under section 3250($l$) [2]. Defendant generally denied its liability to plaintiff for a drawback and affirmatively defended on the ground that plaintiff has no interest in this action and that the real party in interest is USI. Because defendant's affirmative defense, if proven, would bar plaintiff's recovery without going into the merits of the claim, we think it advisable to discuss this question first.

The defendant's contention concerning the plaintiff's alleged ineligibility to maintain this suit is apparently based upon the provision in rule 20(a) of the

2. A second cause of action in plaintiff's petition alleging liability on the ground that defendant misled plaintiff into believing it was purchasing distilled spirits which were eligible for drawback has apparently been abandoned since no evidence on this point was presented at the trial and it has not been briefed to the court.

Rules of this court, 28 U.S.C., to the effect that:

> "Every action shall be prosecuted in the name of the real party in interest * * *."

■ It appears that the present suit is being prosecuted for the plaintiff by and at the expense of USI; that in November 1953 USI paid to the plaintiff $57,695.40 in order to "secure" the ultimate payment of the plaintiff's claim against the defendant; that if the plaintiff should lose the present suit, it would be entitled to keep the $57,695.40 previously paid by USI as "security"; and that if the plaintiff should win the suit, it would be obligated to refund the $57,-695.40 to USI.

Because the plaintiff's actual financial situation will not be affected either favorably or unfavorably by the outcome of the litigation, the defendant contends that the plaintiff is not entitled to maintain this suit.

In the absence of an allegation and supporting evidence from the defendant that the plaintiff has corruptly practiced or attempted to practice fraud against the United States in the proof, statement, establishment, or allowance of the claim involved in this litigation, there is not presented in the case any question relative to the possible forfeiture of the plaintiff's claim under 28 U.S.C. § 2514. Globe Works v. United States, 1910, 45 Ct.Cl. 497, 508.

The plaintiff's claim against the defendant came into existence when the plaintiff used in the manufacture and production of flavoring extracts 6,073.20 proof gallons of tax-paid ethyl alcohol. There is nothing in the evidence to indicate that the plaintiff has renounced the claim or validly assigned it to any-one else. Hence, the plaintiff is the present owner of the claim and "the real party in interest" in the present suit for the recovery of the amount of the claim.

■ We turn now to the merits of plaintiff's claim for a section 3250(l) drawback on the ethyl alcohol it used in the manufacture of flavoring extracts. As previously noted the issue turns on the answer to the question of whether the alcohol was produced foreign or domestically. If it was produced in a registered domestic industrial alcohol plant, as contended for by the plaintiff, then the right to a drawback has been established. However, if the alcohol was "produced," as that word is used in section 3250(l), in a foreign country and imported into the United States, then no provision of law provided for a drawback allowance.[3]

Unfortunately section 3250(l) does not give us a definition of the word produced but plaintiff maintains that it must mean "the production by one means or another of a special grade of ethyl alcohol fit for the specific uses set forth in this section," i. e., medicines, medicinal preparations, food products, flavors, or flavoring extracts unfit for beverage purposes. The record conclusively shows that the alcohol as imported by USI was unfit for any of the purposes described in section 3250(l). It was only after the added redistillation process induced by USI that the alcohol was suitable for the specified purposes. Thus plaintiff says that the alcohol it purchased was not "produced" under section 3250(l) until after the redistillation by USI and since USI is a domestic registered industrial alcohol plant it is entitled to a drawback.

Defendant counters this argument by contending that any act performed by

---

**3.** Section 5131(a) of the Internal Revenue Code of 1954, similar to section 3250 (l) of the 1939 Code, was amended by the Excise Tax Technical Changes Act of 1958, P.L. 85-859, to make eligible for a drawback alcohol imported into the United States and transferred from customs custody to industrial alcohol bonded warehouses. S.Rep. No. 2029, 85th Cong., 2d Sess., states: " * * * This subsection eliminates the existing discrimination against the use of such imported distilled spirts subject to drawback in the manufacture of nonbeverage products by providing for the use of any distilled sprits withdrawn from the bonded premises of a distilled spirits plant."

USI was merely a process of refining or purifying distilled spirits which had been produced abroad and were already in existence. Defendant cites us to section 2809(b) (1) of the Code which provides:

> "*General definition.* Distilled spirits, spirits, alcohol, and alcoholic spirits, within the true intent and meaning of this chapter, is that substance known as ethyl alcohol, hydrated oxide of ethyl, or spirit of wine, which is commonly produced by the fermentation of grain, starch, molasses, or sugar, including all dilutions and mixtures of this substance."

Since the process performed by USI was not a fermentation of material for the production of alcohol, it is contended there was no production within the meaning of section 3250(*l*). For further authority defendant shows us section 2800(c) which provides that the tax on alcohol attaches as soon as it comes into existence as such and not after purification. The alcohol imported by USI was 190 proof ethyl alcohol and subject to the tax and thus defendant maintains that it had already been produced within the meaning of the Code, and since the production was not by a domestic alcohol plant no drawback is available.

■ Section 3250(*l*) is not a provision relating to a refund of a tax assessed and collected by the Government, but is a privilege or benefit bestowed upon those using taxable alcohol for nonbeverage purposes. Since it is a privilege or benefit, "it is to be construed in favor of the government and against the party claiming the grant." United States v. Walker-Hill Co., D.C., 79 F.Supp. 482, 484. In the instant case, merit can be found in both parties definition of the word "produced." However, bearing in mind the nature of a drawback, we reach the conclusion contended for by the defendant primarily on the definitions of distilled spirits found in section 2809(b) (1), quoted *supra,* and the definition of alcohol in section 3124(a) (1) which says:

> "The term 'alcohol' means that substance known as ethyl alcohol, hydrated oxide of ethyl, or spirit of wine, from whatever source or whatever process produced."

Applying sections 2809(b) (1) and 3124(a) (1) there can be no question that the 190 proof ethyl alcohol imported by USI was produced within the meaning of those sections prior to its purification or redistillation. It is true as plaintiff points out that sections 2809 (b) (1) and 3124(a) (1) are contained in Chapter 26 of the Code, whereas section 3250(*l*) is found in Chapter 27. In Aetna Insurance Co. v. United States, Ct.Cl., 159 F.Supp. 831, this court held that the different sections of the Code dealing with refunds of tax on distilled spirits and industrial alcohol, which were in the same chapter but different subchapters, were not so interrelated as to require that they be read in *pari materia.* There we found a logical distinction between refunding taxes on distilled spirits and industrial alcohol which necessarily required that the refund pertaining to each should be read without reference to the other. Here, however, section 3250(*l*) provides for a drawback on nonbeverage distilled spirits produced in a domestic distillery or industrial alcohol plant subject to the taxing provisions of Chapter 26. We can think of no more logical place to look for guideposts in determining the meaning of "produced" than the definitions contained in a chapter of the Code which itself gives rise to the tax on alcohol upon which a drawback is claimed.

Furthermore, were we not convinced that Chapter 26 definitions should be controlling we would independently reach the same result. Obviously drawbacks were limited to distilled spirits produced in this country in order to protect our own distilleries and plants from foreign competition. If we construed "produced" to mean pure to the extent needed for medicines or extracts, the door would be thrown open for drawbacks in circumstances clearly unintended by the statute. A slight amount of poisonous or

noxious material could be induced into pure ethyl alcohol prior to importation which would only require a simple distillation process to remove: Under plaintiff's basic theory, the process of removing the undesirable material would be a production and a drawback would be allowable. Clearly, this would be a complete frustration of the statute's intent to limit drawbacks to domestic producers only. In this case, of course, a large amount of impure foreign matter was contained in the imported alcohol which required an extensive process to remove, but it nevertheless was alcohol at the time it was imported. We do not think it ever was the intention of Congress, or anyone else, that a court should have to determine degrees of impurity in order to say that domestic redistillation of imported alcohol amounted to a production under section 3250($l$). If the alcohol is taxable as alcohol at the time of its importation, then it has been "produced" within the meaning of section 3250($l$) and a further distillation process, no matter how extensive, will not convert it into domestically produced alcohol.

It follows that the alcohol used by plaintiff in the manufacture of extracts was distilled spirits not produced domestically for which no drawback can be allowed.

Plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge and MADDEN and WHITAKER, Judges, concur.